NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Appellant, v AMBASSADOR GROUP, INC., et al., Respondents.

First Department, May 29, 1990

## APPEARANCES OF COUNSEL

*Andrew R. Simmonds* of counsel *(Adam Simms* and *Philip F. Grant* with him on the brief; *D'Amato & Lynch,* attorneys), for appellant.

*Richard S. Simon* of counsel *(Edward J. Yodowitz* and *Neal J. Roher* with him on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for respondents.

## OPINION OF THE COURT

ASCH, J.

In 1983, plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. (National Union), in New York, issued a three-year directors and officers liability and corporate reimbursement policy to defendant Ambassador Group, Inc. and its subsidiaries, Ambassador Insurance Co., a Vermont insurance company now in receivership in Vermont, and Horizon Insurance Co., a New York insurance company now in receivership in New York. Defendant Arnold Chait was president and chairman of the board of each of the three companies. Defendants Doris and Edward Chait were apparently officers and/or directors of either Ambassador Group, Inc. or Ambassador Insurance Co.

The policy has two parts. In the company reimbursement portion, the insurer agrees to pay the corporation any amount permitted by law, which the corporation pays to a director or officer as indemnity from claims asserted against the officers and directors in their capacity as such. The second portion of the policy concerns directors' and officers' liability, and the obligation to indemnify runs directly to the individuals themselves.

The policy covered claims for wrongful acts, defined as "any breach of duty, neglect, error, misstatement, misleading statement, omission or other act done or wrongfully attempted by the [Directors or Officers] * * * solely by reason of their being such Directors or Officers".

"Loss" payable to the individuals was defined as "any amount which the Insureds are legally obligated to pay for a claim * * * made against them for Wrongful Acts, and shall

include damages, judgments, settlements, costs, charges and expenses * * * incurred in the defense of actions * * * provided always that such subject of loss shall not include fines or penalties imposed by law or other matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed."

There were three other relevant exclusions. Policy endorsement number 11 stated: "[T]he Insurer shall not be liable to make any payment for loss in connection with any claim made against the Directors or Officers based upon or attributable to the Named Insured's performance of professional services for others in the capacity of an Insurance Company."

Exclusion 4 (b) excluded coverage of claims "based upon or attributable to [the Insureds] gaining in fact of any personal profit or advantage to which they were not legally entitled". Finally, exclusion 4 (e) barred coverage of claims "brought about or contributed to by the dishonesty of the Insureds [to the extent that] * * * a judgment or other final adjudication thereof adverse to the Insureds shall establish that acts of active and deliberate dishonesty committed by the Insureds with actual dishonest purpose and intent were material to the cause of action so adjudicated."

The policy does not include any obligation that the plaintiff provide a defense but, as noted, only addresses reimbursement of expenses incurred by the insureds in the defense.

This action arises out of two prior California lawsuits. In *Hunt v Schultz,* a child and her parents sued the owner of a dog and the owner of a campground for injuries caused by a 1979 dog bite. Due to defendant's subsidiary Ambassador Insurance Co.'s failure to fully and timely defend and indemnify its insured, the owner of the campground, that party settled the action on its own for $1,500 in October 1982. It then sued Ambassador for bad faith in an action entitled *Frederick v Ambassador Ins.* In a third amended complaint in that action dated 1985, the *Frederick* plaintiffs asserted causes of action against the Ambassador Group, and the Chaits as supervising officers and agents thereof, alleging that they had undercapitalized Ambassador Insurance Co. and schemed to upstream insurance premiums by ignoring the obligations of Ambassador Insurance to defend and indemnify insureds and caused Ambassador Insurance Co. to pay unjustifiably high premiums to Ambassador Group and the Chaits. Further, it was alleged the Chaits were alter egos of the two Ambassador entities.

In September 1986, plaintiff National Union disclaimed coverage with respect to that California action based on endorsement 11, i.e., that the claim arose from Ambassador's "performance of professional services for others in the capacity of an Insurance Company". The trial of the California *Frederick* action was bifurcated, with alter ego issues (the Chaits' individual liability for any judgment against the Ambassador entities) reserved for a second trial. In the first trial, all claims against Doris and Edward Chait were dismissed and all but one claim against Arnold Chait were also dismissed, leaving only the claim of violation of California Insurance Code § 790.03 (unfair practices) outstanding. However, on that claim, in May 1988 the California jury, answering special interrogatories, awarded plaintiffs compensatory damages against Arnold Chait (and the two Ambassador entities) of $6,000 and punitive damages (against Arnold Chait and Ambassador Insurance Co.) of $1,164,125. (The jury also awarded compensatory contractual damages against Ambassador Insurance Co. of $36,280 and punitive damages against Ambassador Group of $1,446,750.)

In August 1988, these defendants entered into a settlement of all claims with the *Frederick* plaintiffs, prior to the second trial on alter ego issues. All claims against the Chaits and the Ambassador entities were released and exchanged for $300,000, paid solely by Arnold Chait.

A prior action by the Chaits and the Ambassador entities was first commenced against National Union in the California courts, alleging bad-faith failure to defend and indemnify them, and is still pending. National Union then commenced this declaratory judgment action in New York.

Plaintiff moved for partial summary judgment for a declaration that it was not liable for the California settlement to the extent it exceeded the $6,000 awarded by the jury against Arnold Chait as compensatory damages, since amounts in excess represented punitive damages. It also contended that endorsement 11 excluded coverage arising from claims handled in the insured's regular course of business. Defendants cross-moved for summary judgment dismissal of the complaint and for judgment on its counterclaim.

The IAS court denied plaintiff's motion for partial summary judgment and granted defendants' cross motion to the extent of declaring that plaintiff insurer was obligated to defend the California action or to advance the defense expenses.

■ The IAS court's rejection of plaintiff's interpretation of endorsement 11, upon which its original disclaimer was based, was inappropriate. While that court, upon reargument, apparently withdrew its interpretation of the provision as one excluding "reinsurance" coverage, to the extent it expressed the belief that the clause as interpreted by plaintiff frustrates the entire policy, it appears to have confused a directors and officers liability policy with an "errors and omissions" policy.

This former type of policy is not intended to cover a claim, such as the California action, based upon failure to properly handle an insurance claim. Coverage of such a claim is unambiguously barred by the language of endorsement 11. The December 8, 1983 quotation letter, indicating that "insurance company errors and omissions" were included, does not mandate a contrary finding, since it preceded the contract formation and contradicts the plain language of the insurance policy, which nowhere purports to cover "errors and omissions".

■ However, there still remains an issue as to whether the alter ego claims against the Chaits, which were covered by the settlement, were excluded by endorsement 11 or included within the coverage of the policy, in view of the fact that the allegations pertained to the Chaits' role as supervising officers, i.e., management. Some substantiation of this position is supported by plaintiff National Union's coverage of claims brought by New York and Vermont officials challenging the Chaits' alleged conduct of the Ambassador companies' business. Accordingly, while plaintiff was not entitled to partial summary judgment on the basis of endorsement 11, the interpretation of that endorsement remains an issue herein.

■ The failure of plaintiff to file endorsement 11 with the New York Superintendent of Insurance for approval would not mandate rejection of its application herein. Failure to file under Insurance Law §§ 2307 and 3102 does not, by itself, void the policy clause, but rather carries its own penalties for nonfiling. Further, such clause is void only if the substantive provisions of the clause are inconsistent with other statutes or regulations. This is not the case here, as there are no statutory standard forms for directors and officers policies in New York *(Matter of Metropolitan Life Ins. Co. v Conway,* 252 NY 449; *Reddington v Aetna Life Ins. Co.,* 264 App Div 70, *affd* 290 NY 621).

■ In any event, the IAS court's declaration of a duty to

defend on the part of plaintiff was improper. The policy herein, as is the case with most directors and officers liability policies, does not impose an obligation to provide a defense, but only to reimburse expenses incurred in the defense *(see, Amrep Corp. v American Home Assur. Co.,* 81 AD2d 325; *Gon v First State Ins. Co.,* 871 F2d 863).* While recent cases have held that, under certain policies, directors and officers liability insurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage was afforded *(see, Okada v MGIC Indem. Corp.,* 823 F2d 276; *Gon v First State Ins. Co., supra; but see, National Union Fire Ins. Co. v Ambassador Group,* 738 F Supp 57 [US Dist Ct, ED NY, Dearie, J.]), such advances on expenses, even if called for by the policy herein, would be subject to apportionment between covered and noncovered claims and parties *(Gon v First State Ins. Co., supra; Pepsico, Inc. v Continental Cas. Co.,* 640 F Supp 656).

Here, the California action in which defendants seek reimbursement for expenses, has been settled. This, coupled with the fact that there are issues relating to the apportionment of expenses, between the Chaits and the Ambassador entities and between compensable covered damages and noncompensable punitive damages, which are still undetermined, makes it unnecessary for us to decide whether plaintiff is required to make interim advances of defense expenses. We note further that determination of this issue must depend upon the language of the policy involved (thus found "ambiguous" in *Okada v MGIC Indem. Corp., supra; Gon v First State Ins. Co., supra; and see, National Union Fire Ins. Co. v Ambassador Group, supra).*

Finally, the IAS court erred when it failed to recognize that punitive damages are uninsurable *(Home Ins. Co. v American Home Prods. Corp.,* 75 NY2d 196; *Public Serv. Mut. Ins. Co. v Goldfarb,* 53 NY2d 392; *Hartford Acc. & Indem. Co. v Village of Hempstead,* 48 NY2d 218). However, simply because 98% of the verdict in the first stage of the bifurcated trial was for punitive damages does not conclusively establish that 98% of the settlement was also for punitive damages, since the settlement also eliminated the need for a trial on the potentially covered alter ego claims. At the very least, therefore, there is a factual issue of the apportionment between covered and punitive damages.

Accordingly, the order of the Supreme Court, New York

County (Carmen Beauchamp Ciparick, J.), entered August 31, 1989, which denied plaintiff's motion for partial summary judgment seeking a declaration that any amount defendants paid in settlement of the California action in excess of the jury's award of $6,000 in compensatory damages is not covered by the policy of insurance issues by plaintiff, and which granted defendants' cross motion to the extent of declaring that plaintiff had a duty to defend or advance the defense expenses of the Chait defendants in the California action, should be modified, on the law, to the extent of denying the cross motion by defendants, and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., MILONAS, ROSENBERGER and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on August 31, 1989, unanimously modified, on the law, to the extent of denying the cross motion by defendants, and otherwise affirmed, without costs and without disbursements.