Ronald DiCOLA, Plaintiff–Appellant,

v.

**SWISSRE HOLDING (NORTH AMER-ICA), INC., a corporation authorized to do business under the laws of the State of New York, Defendant–Appellee.**

No. 908, Docket 92–7940.

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1993.

Decided June 14, 1993.

Gary A. Schultz, New York City (Viscomi & Schultz, Martin N. Silberman, Silberman & Rhine, of counsel), for plaintiff-appellant.

Peter N. Hillman, New York City (Andrea H. Stempel, Chadbourne & Parke, New York City, of counsel), for defendant-appellee.

Before: NEWMAN, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

Ronald DiCola appeals from Magistrate Judge Buchwald's order granting SwissRe Holding (North America), Inc.'s motion for summary judgment and dismissing appellant's complaint.[1] DiCola argues that his termination by SwissRe violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (1988 & Supp. III 1991). Because his termination resulted from the elimination of his position after that position's responsibilities were greatly reduced, we affirm.

## BACKGROUND

DiCola did not respond to SwissRe's statement of undisputed facts pursuant to the Southern District's Local Civil Rule 3(g).

---

1. The parties stipulated that the decision on the summary judgment motion and all subsequent proceedings in the case would be rendered by

Magistrate Judge Buchwald. *See* 28 U.S.C. § 636(c)(1) (1988).

Because "Rule 3(g) requires that [the statement] 'be deemed to be admitted'" if not disputed, the material facts are not in dispute. *Maresco v. Evans Chemetics*, 964 F.2d 106, 111 (2d Cir.1992) (citation omitted).

DiCola was hired by SwissRe on March 23, 1981, to be the Manager of Office Services. He was then forty-two. Initially, his job responsibilities involved overseeing a number of functions within SwissRe's Corporate Services Department, including word processing, purchasing, maintenance, supply, library, reception areas, interoffice moves, security, cafeteria, and fire safety.

He was assisted in most of his duties by the Supervisor of Office Services, a position held by Dennis Hamcke since 1985. Hamcke was at the time of his employment thirty-six. Hamcke had day-to-day responsibility for the mailroom, reception, reproduction, and library, and assisted DiCola with security, cafeteria, and fire safety functions.

Over time, various streamlining efforts and restructurings eliminated a number of DiCola's original responsibilities. During DiCola's first few years with SwissRe, maintenance was transferred to the Facilities Group, word processing was decentralized, and purchasing responsibilities were transferred to the Controller's Department. Subsequently, DiCola also lost responsibility for supply, interoffice moves, and library operation. Other responsibilities ceased because the relevant work was completed. DiCola finished the drafting of a fire safety pamphlet and established the necessary security procedures. His cafeteria responsibilities for locating a food service vendor and maintaining a current liquor license were also completed.

Patricia Lioi, then Vice–President of Office Services, was the principal person responsible for the decision to eliminate the position of Manager of Office Services. She was influenced in part by an August 4, 1987 memorandum sent to all SwissRe officers by CEO Theo Obrist. The memo emphasized efficiency and noted the need to rejustify every position. After discussing the elimination of DiCola's position with Obrist, she eliminated the position of Manager of Office Services and terminated DiCola on January 21, 1988. At that time, DiCola and Hamcke were forty-nine and thirty-nine and earned annual salaries of $52,412 and $39,040, respectively. In a file memorandum of January 26, 1988, she stated:

> Due to various reorganizations which have taken place over the last several years the responsibilities associated with the [Manager of Office Services] position have been significantly reduced. Many of the remaining responsibilities ... are overlapping with the Office Services Supervisor.

> In line with the Company's goal to minimize costs, I decided to eliminate this position from our complement. All duties and responsibilities of this position have been transferred to the Office Services Supervisor effective immediately.

SwissRe's 3(g) statement states that "[b]oth daily responsibility distribution and the savings to the company based on the salary differential influenced Ms. Lioi's choice regarding which position should be eliminated." This statement was based on Lioi's deposition testimony that, after she became Vice–President of Office Services, she reviewed

> the entire staffing of the department, what services we provided, [and] how we provided them.... As part of that, there were two positions which I identified as what I felt were excess positions, or positions that I could not defend when I had to defend my budget. One of those positions was office services manager.

Thus, as the 3(g) statement indicates, the elimination of DiCola's position was unrelated to his performance. Indeed, Lioi testified in her deposition that she did not compare the relative merits of Hamcke's and DiCola's job performances. Rather, she stated that, after the diminution of the Manager's responsibilities, the Supervisor of Office Services "was the position that would be correct for this area."

DiCola remained on SwissRe's payroll until May 13, 1988. He received both salary and benefits but was required to perform no services. In addition to a severance package, SwissRe offered to provide assistance with resume and cover letter preparation, as well

as office space, telephone service, and secretarial assistance. Although SwissRe attempted to relocate DiCola internally, he was not qualified for any available position. SwissRe was able to relocate another employee whose position was eliminated from the Corporate Services Department and who was twelve years older than DiCola.

Finally, SwissRe's 3(g) statement provided that "[a]t no time during [DiCola's] employment with SwissRe ... was [DiCola] subjected to age-based remarks, comments, or slurs. [DiCola's] age was never discussed in any way that could be considered negative.... Nor is there any evidence ... that management kept Hamcke and not [DiCola] because Hamcke was younger."

DiCola filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 22, 1988. No action was taken by the EEOC, and DiCola commenced this action on May 11, 1990. SwissRe thereafter moved for summary judgment. Magistrate Judge Buchwald granted the motion, stating, "after full discovery, [DiCola] has pointed to no evidence upon which an inference of discrimination or pretext could be based."

## DISCUSSION

■ The legal principles governing this matter are well established. In our *de novo* review of a grant of summary judgment, we must view the evidence in the light most favorable to the non-moving party. *See Maresco,* 964 F.2d at 109–10. We affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the non-moving party in the instant case bears the burden of proof at trial, SwissRe may satisfy its Rule 56 burden by showing "that there is an absence of evidence to support [an essential element of] the [non-moving] party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

The ADEA protects individuals between the ages of forty and seventy and provides that it is unlawful to discharge an employee because of that individual's age. *See* 29 U.S.C. §§ 623, 631(a). However, it is not unlawful to discharge an employee "where the differentiation is based on reasonable factors other than age." *Id.*

To establish a prima facie case of age discrimination, DiCola must show that he "(1) was a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of discrimination." *Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991). If the plaintiff satisfies this prima facie burden, the defendant must articulate a " 'clear and reasonably specific' [nondiscriminatory] explanation of the challenged employment decision." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991) (citation omitted). However, "the burden of persuasion does not shift to the employer to show that its stated legitimate reason for the employment decision was the true reason." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 245, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989). Rather, it is the plaintiff who must carry the burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

DiCola argues that where two positions are merged into one, and no individual merit-based comparison of the two employees is made, the ADEA prohibits employers from discharging the older employee because the older employee's salary is greater only as a result of longevity of employment. In such circumstances, he contends, high salary is a surrogate for age. Whether or not that is a correct statement of the law, the facts in the instant matter raise a somewhat different issue. It is true that DiCola's relatively higher salary was a reason for his termination. However, the substantial diminution of his responsibilities not only eliminated the need for his position but also rendered his high salary economically unjustified. In such circumstances, salary is not a surrogate for age because the employer is seeking to ad-

just costs to match productivity, rather than to eliminate a salary differential based on longevity.

■ If a position's salary has been set at a level commensurate with certain job responsibilities and those responsibilities are subsequently diminished, an employer may make corresponding adjustments in positions and salaries regardless of the age of the employees involved. *See Maresco,* 964 F.2d at 113 (stating decision to consolidate offices and terminate some workers may be based on "considerations of cost and administrative convenience," reasonable factors unrelated to age); *see also Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1168 (8th Cir.1985) (indicating that inference of discrimination violating ADEA is less likely in "a reduction-in-force case involving eliminated positions").

This is not a case in which an older person's salary exceeds that of a younger person with similar responsibilities solely because of longevity increases. DiCola's higher salary was based on the greater responsibilities of his position, and he was terminated because his position was eliminated. The elimination of that position was the result of a steady and substantial diminution of responsibilities that ultimately allowed the few remaining responsibilities to be merged into an existing inferior position. DiCola was thus receiving a salary commensurate with responsibilities that he no longer had. We have stated that "nothing in the ADEA ... prohibits an employer from making employment decisions that relate an employee's salary to ... the responsibilities entailed in particular positions and concluding that a particular employee's salary is too high." *Bay,* 936 F.2d at 117. SwissRe was not required to continue DiCola at a salary that was not commensurate with his responsibilities simply because he was over forty.

Affirmed.