[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, The Gilman Brothers Company (Gilman Brothers), appeals pursuant to General Statutes §§ 4-183 and46a-94a from the decision of the defendant Commission on Human Rights and Opportunities (CHRO) finding that the plaintiff discriminated against the defendant Candice Canfield Knowles in violation of General Statutes §§ 46a-58,46a-60 (a)(1), and the Vocational Rehabilitation Act of 1973,29 U.S.C. § 701, et seq. The CHRO determined that the plaintiff illegally terminated Knowles' employment on July 25, 1991, because of her physical disability, that being tendinitis and/or carpal tunnel syndrome. The plaintiff not only challenges certain findings and conclusions of the CHRO, it also argues that the burden of proof was improperly shifted to the plaintiff and that damages for emotional distress and attorney's fees were improperly awarded. The court finds in favor of the CHRO on all issues except those involving the award of damages for emotional distress to Knowles, attorney's fees to the CHRO, and the finding of a violation of the Vocational Rehabilitation Act of 1973.
Knowles filed her complaint with the CHRO on November 26, 1991. (R. #9.) The CHRO commenced an investigation of the complaint pursuant to General Statutes §§ 46a-82 and46a-83. The plaintiff filed an answer on February 23, 1993. (R. #14.) In that answer, Gilman Brothers denied it discriminated against Knowles and alleged that Knowles was fired for poor work performance. (R. #14.)
On July 27, 1992, after conducting an investigation, the CHRO determined that there was reasonable cause to believe that a discriminatory practice had been committed. On August 31, 1992, the complaint was certified for public hearing pursuant to General Statutes § 46a-84. (R. #8.) Public hearings were held on December 6, and 7, 1994; as well as February 8, March 3, and March 7, 1995. (R. #3-7.) Evidence was taken including a transcript of the deposition of Dr. Mascaro, Knowles' chiropractic physician; and testimony was presented, including that of Dr. Thomas C. Cherry, an expert for the plaintiff. Other witnesses included Evan Gilman, the president of Gilman Brothers; Cyrus Gilman, vice president of Gilman Brothers; and Nancy Thomas, an employee; as well as, Knowles and Lois Dyer, a former employee of Gilman Brothers who unsuccessfully claimed she was fired because she suffered from carpal tunnel syndrome. CT Page 5343
In its decision of August 8, 1995, the CHRO found that: (1) Knowles was hired by the plaintiff as a secretary/receptionist on March 25, 1991; (2) Knowles was physically disabled and/or perceived to be physically disabled with a chronic physical handicap or impairment, that being tendinitis or carpal tunnel syndrome of her right wrist; (3) Knowles was capable of performing the tasks of and was qualified for her position; (4) she was discharged from that position by the plaintiff on July 25, 1991; and (5) the plaintiff's non-discriminatory reason for firing Knowles was not legitimate. The CHRO concluded that the plaintiff illegally terminated Knowles' employment because of her physical disability, in violation of General Statutes §§46a-58, 46a-60 (a)(1) and the Vocational Rehabilitation Act of 1973. (R. #1.)
To remedy these violations, the CHRO issued a cease and desist order and prohibited the plaintiff from retaliating against Knowles in any manner. Additionally, the CHRO ordered the plaintiff to expunge its records and files of any negative or detrimental information about Knowles' job performance and prohibited the plaintiff from reporting that she was terminated for poor work performance. The plaintiff was also directed to post anti-discrimination posters in three locations.
The CHRO also awarded monetary damages to Knowles. These damages included $1,952.39 in back pay plus $829.20 to reimburse her COBRA health insurance costs, as well as 10% annual interest from November 26, 1991. The plaintiff was ordered to pay all of Knowles' outstanding medical bills, and to reimburse the Department of Labor, Employment Security Division, for $3,609 in unemployment benefits Knowles received. Knowles was also awarded $5,000 for emotional distress she suffered as a result of plaintiff's discriminatory conduct. (R. #1 p. 36-38.) The CHRO was awarded $15,000 in attorneys' fees. (R. #1 p. 37, #2, 
#126.)
On August 25, 1995, the CHRO hearing officer issued a ruling, adverse to the plaintiff, on a petition for reconsideration. (R. #2 #127.) The plaintiff filed this appeal on October 3, 1995. The administrative record was filed on April 25, 1996. The plaintiff's brief was filed on CT Page 5344 June 28, 1996. The CHRO's brief was filed on October 18, 1996, and Knowles did not file a brief. Oral argument on this appeal was heard on January 14, 1997. Further facts will be related as warranted.
On appeal, the plaintiff argues that: (1) Knowles was not a disabled person covered by the Connecticut Fair Employment Practices Act, General Statutes §§ 46a-51, et. seq. (FEPA); (2) the CHRO hearing officer improperly assigned the burden of proof to the plaintiff; (3) the record does not contain substantial evidence to support the CHRO's finding of discrimination; (4) the CHRO hearing officer improperly awarded damages for emotional distress to Knowles and attorneys' fees to the CHRO. The other issues raised in the appeal but not briefed are viewed as abandoned. Collins v. Goldberg, 28 Conn. App. 733, 738,611 A.2d 938 (1992).
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that the substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Department of Health Services,220 Conn. 86, 94, 596 A.2d 374 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light andPower Co. v. Dept. of Public Utility Control, 219 Conn. 51,57-58, 591 A.2d 1231 (1991). Similarly, "with regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question CT Page 5345 is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v.Commission on Hospitals and Health Care, 182 Conn. 314, 318,438 A.2d 103 (1980).
Nevertheless, the court recognizes that where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative [agency], it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal, or an abuse of discretion." United Parcel Service, Inc. v. Administrator,Unemployment Compensation Act, 209 Conn. 381, 385,551 A.2d 724 (1988).
As a result of the Connecticut Supreme Court's recent ruling in Commission on Human Rights and Opportunities v.Truelove and Maclean, Inc., et al., 238 Conn. 337,680 A.2d 1261 (1996), the CHRO concedes that neither the $5,000 in emotional distress damages nor the $15,000 in attorneys' fees may be taxed for violation of General Statutes § 46a-60
(a)(1). The CHRO further acknowledges that the Vocational Rehabilitation Act of 1973 is inapplicable to this case. Therefore, pursuant to General Statutes §§ 4-183 (j) and 4-183
(k), the court sustains the plaintiff's appeal as to the Vocational Rehabilitation Act of 1973, the award of damages for emotional distress, and the award of attorneys' fees. The CHRO's decision is modified to exclude these awards.
Turning to the remaining issues, the plaintiff challenges the CHRO's finding that Knowles was a disabled person suffering from a chronic condition protected by FEPA, which prohibits discriminatory practices including discharging an individual from employment because of the individual's physical disability. See General Statutes §46a-60 (a)(1).
Both General Statutes §§ 1-1f(b) and 46a-51 (15) define "physically disabled" as "any chronic physical handicap, infirmity or impairment, whether congenital or resulting CT Page 5346 from bodily injury, organic process or changes or from illness." The plaintiff argues the evidence does not support the finding that Knowles' handicap was chronic. "Chronic" is not defined in FEPA.
In construing "chronic," the hearing officer properly looked to the legislative history of the act and then to various definitions of the word. One such definition was quoted from Black's Law Dictionary, pp. 241-242 (Sixth Ed. 1990), which states as follows: "[w]ith reference to diseases, of long duration, or characterized by slowly progressive symptoms; deepseated and obstinate, or threatening a long continuance; -distinguished from acute."
The plaintiff argues that the hearing officer should have deferred to the opinion of its expert, Dr. Cherry, on the issue of whether Knowles' condition was chronic. "[A]n administrative agency is not required to believe any witness, even an expert." (Quotation marks omitted.)Samperi v. Inland Wetlands Agency, 226 Conn. 579, 597
(1993).
Dr. Cherry's own testimony supports the hearing officer's interpretation of the meaning of "chronic." Dr. Cherry agreed that Knowles suffered from carpal tunnel syndrome and that both tendinitis and carpal tunnel syndrome may be "chronic" physical conditions. He opined that Knowles condition was not chronic because she had only suffered from it for one month at the time of her termination. Dr. Cherry further testified, however, that Knowles' job experience before working for the plaintiff "set the stage or provided the background for the development of the carpal tunnel syndrome and contributed to its development." (Record 105, p. 2.) The CHRO's definition of "chronic" and its finding that Knowles was "physically disabled" are reasonable and supported by the record.
In reviewing the CHRO hearing officer's decision, the court finds that, contrary to the plaintiff's assertion, the hearing officer properly applied the method of analysis requiring the complainant to establish a prima facia case before the respondent articulated its nondiscriminatory reason for the termination. McDonnell Douglas Corp. v.Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);DiCola v. SwissRe Holding (North America), Inc., 996 F.2d 30
CT Page 5347 (2d Cir. 1993); Ann Howards Apricots Restaurant, Inc. v.CHRO, 237 Conn. 209, 225-226, 680 A.2d 1261 (1996). The hearing officer faithfully set out and applied the appropriate analysis. The plaintiff argued that it legitimately terminated Knowles for poor work performance, but based on the evidence before him the hearing officer found this reason to be a pretext. In so doing, the hearing officer did not improperly assign a burden of proof to the employer.
The court must now determine whether the CHRO's decision is supported by substantial evidence. ConnecticutLight and Power Co. v. Dept. of Public Utility Control,216 Conn. 627, 639, 583 A.2d 906 (1990). The substantial evidence criteria is satisfied if the record provides a "substantial basis of facts from which the fact in issue can be reasonably inferred." Lawrence v. Kozlowski,171 Conn. 705, 713, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969,97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977). This standard requires that the administrative decision be upheld "if the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding." Connecticut Building Wrecking Co. v. Carothers,218 Conn. 580, 601, 590 A.2d 447 (1991). The court's latitude in reviewing the CHRO's factual findings and conclusions is, therefore, limited. Adriani v. Commissionon Human Rights and Opportunities, 228 Conn. 545, 550-57,636 A.2d 1360 (1994); Miko v. Commission on Human Rights andOpportunities, 220 Conn. 192, 200-01, 596 A.2d 396 (1991).
To establish a claim of discriminatory discharge, such as here, the complainant must demonstrate by a preponderance of the evidence that she "(1) was a member of a protected class; (2) was qualified for the position; (3) was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination." DiCola v. SwissRe Holding (North America),Inc., supra, 996 F.2d 32. See also McDonnell Douglas Corp.v. Green, supra, 411 U.S. 792; and Ann Howard's ApricotsRestaurant v. CHRO, supra, 237 Conn. 209. The plaintiff contests the CHRO's findings on the first, second and fourth factors.
Turning to the first factor, the record supports the CHRO's finding that Knowles was qualified for her job as a CT Page 5348 secretary/receptionist based on her work experience before and after being hired by the plaintiff. Indeed, the plaintiff hired Knowles for the position after conducting an extensive hiring process. Knowles described the duties of her job at Gilman Brothers and her description matched that given by employees of the plaintiff. This demonstrates that Knowles had a solid understanding of the nature of her job.
Furthermore, in an informal evaluation meeting with Cyrus Gilman after she was hired, the plaintiff was told that she was making too many personal telephone calls during the workday and that she was taking the mail to the post office too early in the day. Her ability to perform the tasks assigned to her was not criticized, and, in fact, she testified that she was actually commended for her work.
As to the second factor, the evidence that Knowles was a member of a protected class, i.e. an individual who was "physically disabled" as defined in FEPA has already been discussed. Dr. Mascaro described in his deposition the plaintiff's wrist problems as they existed in June of 1991. The Plaintiff also described her condition. Dr. Alessi, to whom Dr. Mascaro referred Knowles, diagnosed carpal tunnel syndrome in 1992. Dr. Cherry diagnosed it in 1994. Whether Knowles suffered from tendinitis or carpal tunnel syndrome, or both, at the time of her termination, there is substantial evidence in the record from which the CHRO hearing officer could reasonably conclude that Knowles was a member of the class protected by General Statutes § 46a-60
(a)(1).
Contrary to the plaintiff's assertions, the evidence supported the CHRO's inference under the fourth factor that the plaintiff terminated Knowles because of her physical disability. It is important to note that the CHRO hearing officer is free to disregard testimony he or she may find incredible. "In determining whether an administrative finding is supported by substantial evidence, a court must defer to the agency's assessment of the credibility of the witnesses and to the agency's right to believe or disbelieve the evidence presented by any witness. . . ." (Internal quotation marks omitted.) Connecticut Building Wrecking Co.v. Carothers, 218 Conn. 580, 593, 590 A.2d 447 (1991).
Knowles received no poor evaluations or criticisms of CT Page 5349 her performance. Nevertheless, she was fired shortly after giving Cyrus Gilman and Nancy Thomas a note from her chiropractic physician indicating that she had pain and weakness of the right wrist and that typing was causing stress to her wrist. The chiropractor recommended that her chair be raised relative to the height of the typewriter. Knowles had previously informed Cyrus Gilman she would be wearing a wrist brace at work. Evan Gilman, Cyrus Gilman and Nancy Thomas testified that they observed Knowles wear a wrist brace to work. (R. #9.)
There was also evidence that another employee, Lois Dyer, was fired by Gilman Brothers because she suffered from carpal tunnel syndrome. For example, Dyer's pink slip stated that Dyer's disability was the reason for her termination. Knowles was hired to fill Dyer's position. The CHRO did not improperly consider this evidence in light of Knowles' situation.
The plaintiff contends that the CHRO is collaterally estopped from relying on the evidence concerning Dyer's termination because her claim before the CHRO was unsuccessful. This claim is meritless.
"Collateral estoppel, or issue preclusion prevents a litigant from relitigating an issue that has been determined in a. . . . prior suit." Virgo v. Lyons, 209 Conn. 497, 501,551 A.2d 1243 (1988). Knowles was not involved in, much less a litigant in, the prior CHRO action involving Dyer. Knowles had not even been hired by Gilman Brothers at that time.
Furthermore, the purpose behind collateral estoppel is to "protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." Id. No court proceeding was ever instituted in the Dyer case. Thus, the CHRO could properly hear and consider evidence regarding Dyer's experience with Gilman Brothers.
For these reasons, the record contains substantial evidence from which the CHRO could reasonably conclude and infer that the discriminatory employment practice alleged in the complaint occurred. CT Page 5350
After consideration of the remainder of the plaintiff's claims, the court finds that they do not meet the standards for review of administrative agency decisions required by General Statutes § 4-183 (j).
The appeal is sustained and the decision of the CHRO is modified in accordance with this judgment.
Robert F. McWeeny, J.