NORTHWESTERN MUTUAL LIFE
INSURANCE CO., Plaintiff,

v.

Debra FOGEL, Defendant.

No. 97–CV–2108JS.

United States District Court,
E.D. New York.

Sept. 30, 1999.

Peter Jason, Duane, Morris & Heckscher, Philadelphia, PA, for plaintiff.

John W. Dehaan, Binder & Binder LLP, Hauppauge, NY, for defendant.

### ORDER ADOPTING REPORT AND RECOMMENDATION

SEYBERT, District Judge.

Pending before the Court are objections submitted by Defendant Debra Fogel to the Report and Recommendation of United States Magistrate Judge Michael L. Orenstein, (hereinafter "Report"), dated September 14, 1999. Familiarity with the complete procedural history of this matter is presumed.

A dispositive motion may be referred to a Magistrate Judge for proposed

findings of fact and recommendations for its disposition pursuant to 28 U.S.C. § 636(b)(1)(B), and specific objections thereto shall be reviewed de novo by this Court to accept, reject, or modify, in whole or in part, the Magistrate's findings or recommendations. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). Although a district court undertakes a de novo review of a Magistrate Judge's Report and Recommendation, such review is not intended to entirely replace, and render superfluous, the Magistrate's efforts. Accordingly, Rule 72(b) provides, in relevant part, that "a party may serve and file specific, written objections to the proposed findings and recommendations."

In this case, "Defendant's Objections to the Report and Recommendation on Plaintiff's Motion for Partial Summary Judgment" (hereinafter "Objections"), constitute a one sentence introduction, followed by a verbatim repeat of the argument presented on pages seven through twelve of "Defendant's Memorandum of Law in Support of Her Cross–Motion and in Opposition to Plaintiff's Motion for Summary Judgment" (hereinafter "Memorandum").

The Court can draw only two conclusions from this behavior. Either Defendant implies that Magistrate Orenstein never addressed or even read Defendant's Memorandum, or the Objections are a perfunctory response intended to "cover all bases." Nonetheless, the Court is disturbed by the level of advocacy exhibited in submitting such Objections and hereby directs Binder & Binder to send a copy of this Order to Debra Fogel by certified mail return receipt requested, and to file proof of such service with the Court.

Judge Orenstein's Report considered and analyzed Defendant's Memorandum and the cases cited therein in a fluid fashion, while explicating New York Insurance Law § 3201 as it applies herein. The Court adopts Judge Orenstein's Report in its entirety and concurs in the thorough and well-reasoned analysis contained therein.

Accordingly, the Court hereby grants Plaintiff's motion for partial summary judgment striking Defendant's Fourth Affirmative Defense and denies Defendant's cross-motion as moot.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

ORENSTEIN, United States Magistrate Judge.

Pursuant to the Order of District Judge Joanna Seybert, dated June 25, 1999, the plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure striking the defendant's affirmative defenses[1] and the defendant's multi-part cross-motion regarding plaintiff's use of the form entitled, "Declaration to Paramedical Examiner" has been referred to the undersigned. For the reasons that follow, this Court respectfully reports and recommends that the plaintiff's motion be **GRANTED** and the defendant's cross-motion be **DENIED** as moot.

### FACTUAL BACKGROUND

In the Fall of 1994, defendant Debra Fogel ("defendant" or "Fogel") applied to plaintiff The Northwestern Mutual Life Insurance Company ("plaintiff" or "NML") for a disability income insurance policy providing a monthly benefit of up to $4,140. (Pl. 56.1 Statement at ¶ 1).[2] The NML Disability Insurance Application (the "application") was in two parts and contained 43 questions. (*See* Exh. A and B

---

1. Defendant withdrew her Second and Third Affirmative Defenses. (*See* Def.'s Mem. Opp.Summ.J. at 2). In addition, at oral argument on August 10, 1999, Defendant withdrew her First Affirmative Defense.

2. "Pl. 56.1 Statement at ¶ __" refers to the plaintiff's Local Civil Rule 56.1 Statement pursuant to Local Civil Rule 56.1(a) of the Local Civil Rules of the Southern and Eastern Districts of New York.

annexed to Pl.'s Summary Judgment Motion). Questions 1 through 30 (the "first part" of the application) consisted of questions of a general nature unrelated to the applicant's medical history. (*See* Exh. A annexed to Pl.'s Summary Judgment Motion). Questions 31 through 43 (the "second part" of the application), entitled, "Declarations to Paramedical Examiner" (the "Declarations"), consisted of questions relating specifically to the applicant's medical history. (*See* Exh. B annexed to Pl.'s Summary Judgment Motion).

In answering the medical questions on the Declarations, defendant stated, *inter alia,* that she (1) had not been examined, advised or treated by any physician within the past five years, except for a physical examination by her obstetrician/gynecologist (Exh. B annexed to Pl.'s Summary Judgment Motion, Questions 36A and 42); (2) had not had any EKG, X-ray or other tests within the past five years (*Id.* Question 36C) and (3) had not been treated for or had any indication of any recurrent headaches or nervous disorders or any disorder of the muscles or bones, spine, back or joints in the last ten years (*Id.* Questions 33B and 33H). Defendant signed the first part of the application on October 26, 1994 and signed the second part of the application on November 7, 1994. (Pl. 56.1 Statement at ¶ 1).

Following NML's home office's receipt of defendant's application, NML commenced a routine underwriting investigation. (Rogers Aff. ¶ 6). Based upon defendant's seemingly satisfactory medical history as well as other nonmedical factors, NML issued defendant two disability income insurance policies, one providing a monthly benefit of up to $2,270, with a beginning date of 181 days, and the other providing a monthly benefit of up to $1,600, with a beginning date of 91 days. (Rogers Aff. ¶ 11).

In December 1996, defendant submitted a written request for disability benefits to NML, supported in part by an attending physician's statement from Dr. Richard

Blanck. (Rogers Aff. ¶ 12). During the course of NML's investigation of defendant's claim in January 1997, NML obtained copies of defendant's medical records which revealed *inter alia* that she had had three MRI's in January 1994 which were reported to be "suspicious for demyelinating disease" (*See* Exhs. I, J, and K annexed to Pl.'s Summary Judgment Motion), and that the day after her MRI's were completed, Dr. Seymour Gendelman, a neurologist, examined defendant and stated his impression was that her symptoms represented "a mild exacerbation of demyelinating disease." (Exh. L annexed to Pl.'s Summary Judgment Motion).

In addition, NML discovered that in March 1994 plaintiff had asked Dr. Gendelman to provide a medical certification so that she could obtain a Nassau County handicapped parking permit. (Exh. M annexed to Pl.'s Summary Judgment Motion). Dr. Gendelman completed the medical certification on April 1, 1994, stating defendant's handicapped condition was within New York State's definition of a "severely disabled person," and Nassau County issued a handicapped parking permit to defendant. (Exh. N annexed to Pl.'s Summary Judgment Motion).

NML also discovered the following information relating to defendant's medical history. On August 2, 1994, Dr. Gendelman examined defendant, recorded that "[t]he left numbness has persisted but with diminished dexterity," urged "her to utilize a Beta–Interferon program" and noted that "[t]his will await her second opinion." (Exh. O annexed to Pl.'s Summary Judgment Motion). On August 5, 1994, Dr. Richard Blanck, a neurologist, examined defendant. (Exh. P annexed to Pl.'s Summary Judgment Motion). In his office note of that date, Dr. Blanck recorded that defendant came to the office "complaining about multiple sclerosis," and noted that she "suffers with a chronic neurological illness with a tendency towards relapse and remission." *Id.* Dr. Blanck again examined defendant on October 10, 1994 and

recorded that defendant had left upper extremity stiffness, numbness and incoordination and "has been depressed about her problems." (Exh. R annexed to Pl.'s Summary Judgment Motion).

Having completed its review of defendant's claim for benefits, NML sent defendant a letter dated March 25, 1997, detailing its findings concerning her medical history, stating NML would have not issued the Policies if the aforementioned medical history had been disclosed on the application and offering defendant an opportunity to respond and/or discuss the matter in more detail prior to rescinding the policies. (Exh. V annexed to Pl.'s Summary Judgment Motion). Defendant's attorney responded by letter dated April 2, 1997. (Exh. W annexed to Pl.'s Summary Judgment Motion). After reviewing defendant's response, NML informed defendant by letter dated April 23, 1997 of its decision to proceed with the rescission of the two policies and forwarded a full refund of premiums paid on the policies plus interest. (Exh. X annexed to Pl.'s Summary Judgment Motion). Defendant did not agree to the rescission.

On April 23, 1997, NML commenced the instant action in the United States District Court for the Eastern District of New York (Seybert, *J.*), seeking to rescind the two disability income insurance policies it issued to defendant in the fall of 1994 on the grounds that defendant allegedly made fraudulent misrepresentations to NML in her application for the policies. Defendant counter-claimed, seeking to enforce the terms of the policies and recover disability benefits for her claim.

In opposing plaintiff's claim for rescission of the policies, defendant asserted four affirmative defenses, only one of which remains before this Court. Defendant's Fourth Affirmative Defense, seeks to estop plaintiff from denying defendant coverage based upon information gathered by use of forms which defendant alleges were not approved by the New York State Insurance Department.

Plaintiff now moves after oral argument for partial summary judgment, seeking to strike defendant's Fourth Affirmative Defense.[3] Defendant cross-moves for an order precluding plaintiff from using the form entitled, "Declarations to Paramedical Examiner" as evidence in this action and precluding plaintiff from presenting any evidence of, or referring to, any alleged misrepresentations contained within that form.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Raskin v. Wyatt Co.,* 125 F.3d 55, 60 (2d Cir.1997); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1299 (2d Cir.1995) (citing *Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element] of [the non-moving party's case],'" *FDIC v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (quoting *DiCola*

---

**3.** Plaintiff's Rule 56.1 Statement also reflected its intention to move for dismissal of defendant's Fourth Counterclaim. However, defendant has since withdrawn that counterclaim. *See* Docket Report Calendar Entry No. 20.

*v. SwissRe Holding (North America), Inc.,* 996 F.2d 30 (2d Cir.1993) (citation and internal quotation marks omitted)) (brackets in original). In *Giammettei,* the Second Circuit explained:

> While whatever evidence there is to support an essential element of an affirmative defense will be construed in the light most favorable to the non-moving defendant, there is 'no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.' *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. After all, in cases where there is an absence of evidence to support an essential element of a defense, with respect to that defense 'there can be "no genuine issue as to any material fact" since a complete failure of proof concerning an essential element of the [defendant's affirmative defense] necessarily renders all other facts immaterial.' *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

34 F.3d at 54 (brackets in original).

Defendant states in her Fourth Affirmative Defense that "the insurance application forms upon which plaintiff relies in this action were not approved for use or accepted for use within the State of New York by the State of New York Insurance Department." (Amended Answer ¶ 53). Specifically, plaintiff contends that the form entitled, "Declarations to Paramedical Examiner" that she signed did not comply with New York Insurance Law § 3201, and therefore the insurance application form is void and cannot be considered a part of the policies.

New York Insurance Law § 3201 provides in pertinent part:

> (a) In this article, "policy form" means any policy, contract, certificate, or evidence of insurance and any application therefor, or rider or endorsement thereto, affording benefits of the kinds of insurance specified in paragraph one, two or three of subsection (a) of section one thousand one hundred thirteen of this chapter, . . . .
>
> (b)(1) No policy form shall be delivered or issued for delivery in this state unless it has been filed with and approved by the superintendent as conforming to the requirements of this chapter and not inconsistent with law.

A review of the forms at issue in the case before this Court indicates that the first part of NML's form of disability insurance application signed by defendant, relating to matters of a general nature unrelated to the applicant's medical history, was approved by the Acting Superintendent of Insurance of the State of New York on March 27, 1990. (Exh. Y annexed to Pl.'s Summary Judgment Motion).

With regard to the second part of NML's form of disability insurance application, relating specifically to an applicant's medical history, NML's form of medical questionnaire [4] which it submitted to the Superintendent of Insurance of the

---

4. NML has three forms of medical questionnaires depending on the type of physical examination required for the application. (Youngquist Aff. ¶ 5). The type of physical examination required by NML in connection with an application for disability insurance depends upon a number of factors, including principally the age of the applicant and the amount of insurance applied for. (Youngquist Aff. ¶ 4). According to James A. Youngquist, NML's Associate Actuary, in certain circumstances NML requires a medical examination by a licensed physician or a paramedical examiner, and in some instances NML does not require a physical examination. *Id.* Youngquist explained that where a medical examination is required, the examining doctor asks and records the application questions relating to the applicant's medical history; where a paramedical examination is required, the paramedical examiner asks and records those questions; and where no physical examination is required, the agent who takes the application asks and records those questions. *Id.* Each of NML's three medical questionnaire forms has a different title depending on who asked and recorded the data—namely (i) "Declarations to Medical Examiner"; (ii) "Declarations to Paramedical Examiner" and (iii) "Nonmedical Applications Only". *Id.*

State of New York was approved on January 13, 1986. (Exh. Z annexed to Pl.'s Summary Judgment Motion). NML's form was entitled, "Nonmedical Applications Only." *Id.*

■ The form entitled, "Nonmedical Applications Only" is exactly the same as the form defendant signed, entitled "Declarations to Paramedical Examiner," with the exception of (i) the title of the forms; (ii) the signature line differences depending upon whether an agent, paramedical examiner or medial examiner asked and recorded the data and (iii) the questions relating to height and weight, which were not included on the form that defendant signed[5]. (Youngquist Aff. ¶ 3). In the instant matter, the paramedical examiner conducted a physical examination, including measuring defendant's height and weight, and reported the results of the physical examination on a separate form. (Youngquist Aff. ¶ 6). Thus, every medical question on the form defendant signed, entitled "Declarations to Paramedical Examiner" was included on the form that was approved by the New York State Insurance Department.

Inasmuch as the differences between the form of medical questionnaire that was submitted to and approved by the New York State Insurance Department and the form that defendant signed are non-substantive, this Court finds that plaintiff's technical failure to submit for approval to the New York State Insurance Department the medical questionnaire form, entitled "Declarations to Paramedical Examiner" neither operates to void the insurance application form and policy nor relieves defendant of her duty to provide truthful information on her disability income insurance application. *See, e.g., McDaniels v.*

*American Bankers Insur. Co.,* 643 N.Y.S.2d 846, 846–47, 227 A.D.2d 951, 952 (4th Dep't 1996) (holding insurer's technical noncompliance with Insurance Law's requirement to place question on policy application in ten-point type did not preclude it from disclaiming coverage based upon insured's alleged misrepresentations nor relieve insured of duty to provide truthful data on her application); *National Union Fire Insur. Co. v. Ambassador Group, Inc.,* 556 N.Y.S.2d 549, 553, 157 A.D.2d 293, 298 (1st Dep't 1990) (holding failure of insurer to file under sections of Insurance Law requiring readable and understandable policies would not, by itself, void the policy clause, but rather carries its own penalties for non-filing. "Further, such clause is void only if the substantive provisions of the clause are inconsistent with other statutes or regulations."); *Benefit Trust Life Insur. Co. v. Rowland,* 486 N.Y.S.2d 500, 502, 107 A.D.2d 1033, 1034 (4th Dep't) (holding "fact that prototype group disability policy submitted to insurance department for approval contained blanks, and that therefore policy actually issued with blanks filled in may have been unapproved in violation of insurance statutes, did not warrant voiding of 'nonduplication of benefits' clause in group disability policy"), *aff'd* 65 N.Y.2d 993, 494 N.Y.S.2d 299, 484 N.E.2d 662 (1985). Accordingly, the Court finds "an absence of evidence" to support defendant's Fourth Affirmative Defense.[6] *Giammettei,* 34 F.3d at 54.

## CONCLUSION

Based on the foregoing, this Court respectfully reports and recommends that plaintiff's motion for partial summary judgment striking defendant's Fourth Affirmative Defense be **GRANTED.** Fur-

5. The form entitled "Nonmedical Applications Only" include the height and weight questions because in those circumstances where an agent takes an application that does not require a medical or paramedical examination, the agent asks the applicant those questions. (Youngquist Aff. ¶ 6). Where, however, the applicant has a medical or paramedical examination, the medical examiner or paramedical examiner measures and records the applicant's height and weight as part of the physical examination conducted. *Id.*

6. This finding renders defendant's cross-motion moot.

ther, this Court respectfully reports and recommends that defendant's cross-motion be **DENIED** as moot.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. June 30, 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992).

September 14, 1999.