[792 NYS2d 397]

FEDERAL INSURANCE COMPANY, Appellant, v L. DENNIS KOZLOWSKI, Respondent, et al., Defendants.

First Department, March 22, 2005

34

**APPEARANCES OF COUNSEL**

*Hogan & Hartson L.L.P.,* Washington, DC (*David J. Hensler* [of the District of Columbia Bar, admitted pro hac vice], *Paul B. Sweeney, David Newmann* and *Lorane F. Hebert* of counsel), for appellant.

*Anderson Kill & Olick, P.C.,* New York City (*William G. Passannante, Jeffrey E. Glen, Alex D. Hardiman* and *Danielle Feldman* of counsel), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

This is an appeal from an interlocutory judgment in defendant Kozlowski's favor, declaring that plaintiff Federal Insurance Company is obliged to defend him in a civil action alleging that he breached his duties as a fiduciary of pension plans under the Employee Retirement Income Security Act of 1974 (ERISA),[1] and to pay his defense costs as and when incurred in two other separate legal proceedings—a civil securities suit[2] and a criminal action[3] (collectively, the underlying actions). Although Tyco International and numerous individuals were originally named as defendants in this action, only Kozlowski, Tyco's former chief executive officer,[4] and two others, Mark Swartz and Mark Belnick, remain as defendants. Only Kozlowski and Federal are parties to this appeal.

Federal had issued to Tyco a series of "Executive Protection" insurance policies intended to protect its directors and officers,

---

1. *Overby v Tyco Intl. Ltd.,* No. 02-CV-1357-B (D NH) (ERISA action).

2. *In re Tyco Intl. Ltd.,* MDL Docket No. 02-1335-B (D NH) (securities action).

3. *People v Kozlowski,* Indictment No. 5259/02 (NY Sup Ct) (criminal action).

4. In its brief, Federal states that Kozlowski resigned on June 3, 2002.

including Kozlowski, against "Loss" due to "Claims" alleging "Wrongful Acts" as defined in the policies. This case involves two of those policies, which were virtually identical as pertinent herein. The policies provided executive liability and indemnification (ELI) coverage and fiduciary liability coverage for Tyco's directors and officers. The fiduciary liability section contains a duty-to-defend provision[5] while the ELI section, which has no duty-to-defend provision, does contain a provision requiring Federal to pay defense costs.

The fiduciary liability section of the policies requires Federal to pay "on behalf of" Tyco's directors and officers all "Loss" that such insured person "becomes legally obligated to pay on account of any Claim" made during the policy period for an alleged "Wrongful Act" by such director or officer or "by any person for whose Wrongful Acts" such director or officer is legally responsible. Wrongful acts are defined as, inter alia, "any breach of the responsibilities, obligations or duties imposed upon fiduciaries of [a] Sponsored Plan by [ERISA]," as well as "any negligent act, error or omission in the Administration of [such a plan]." A "Claim" is defined as a civil, criminal, administrative or regulatory proceeding. As noted, plaintiff agreed to defend all such claims.

The ELI section of the policies requires Federal to pay "on behalf of" Tyco's directors and officers (the insured persons) all "Loss" that any insured person "becomes legally obligated to pay on account of any Claim" made against him/her during the policy period for an alleged "Wrongful Act." "Loss" is defined as "the total amount which any Insured Person becomes legally obligated to pay on account of each Claim and for all Claims in each Policy Period . . . made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judg[]ments, settlements, costs and Defense Costs." The ELI section defines a "Wrongful Act" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by an Insured Person, individually or otherwise, in his Insured Capacity, or any matter claimed against him solely by reason of his serving in such Insured Capacity." The section defines "Claim" to include written demands for monetary damages and civil, criminal, administrative and regulatory proceedings.

---

**5.** "[Federal] shall have the right and duty to defend any Claim covered by this coverage section. Coverage shall apply even if any of the allegations are groundless, false or fraudulent."

The policy contains exclusions applicable to these coverages, only one of which—a so-called "personal profit" exclusion for claims "based upon, arising from, or in consequence of such Insured Person having gained in fact any personal profit, remuneration or advantage to which such Insured Person was not legally entitled"—is relevant to this appeal.[6]

The policy also contains two severability clauses, one applicable to representations made to Federal as part of Tyco's application for insurance, and the other to certain policy exclusions. The severability clause relating to the insurance application precludes Federal from imputing to any insured person a statement or knowledge possessed by any other insured person "for the purpose of determining if coverage is available." Similarly, the severability provision with respect to certain exclusions, including the personal profit exclusion, precludes Federal from imputing to an insured person any facts or knowledge of other insured persons "to determine if coverage is available."

In the ERISA action the plaintiffs allege that Kozlowski and other fiduciaries of employee benefit plans acted negligently and breached their fiduciary duties with respect to those plans by, inter alia, negligently misrepresenting and failing to disclose information regarding the management of plan assets, and negligently permitting the plans to purchase and hold shares in the Tyco stock fund when it was imprudent to do so. The ERISA plaintiffs also allege that Kozlowski negligently misrepresented, failed to disclose or omitted information in Securities and Exchange Commission (SEC) filings, as well as about Tyco's acquisitions, improper accounting practices, earnings and investment objectives, and the fund's risk and return characteristics.

In the securities action, a 330-page complaint sets forth various violations of securities laws and rules. Among other things, it alleges that Tyco's and Kozlowski's misstatements, acts and omissions caused the plaintiffs to purchase Tyco stock at excessive prices, resulting in damages. The criminal action[7] involves charges that Kozlowski was involved in a criminal enterprise in which he and Swartz stole Tyco assets. He is also charged with

---

**6.** This language, quoted from the personal profit exclusion in the ELI section, is virtually identical to the personal profit exclusion in the fiduciary liability section.

**7.** At the first trial the jury was unable to agree, and a retrial is currently under way.

falsifying business records and concealing and distorting material information. Throughout the indictment there are numerous allegations of wrongful acts including misstatements, misleading statements or omissions about the level of spending, compensation, loans, stock sales and earnings.

Federal had notice of the underlying lawsuits against Kozlowski as well as numerous other lawsuits against him at least as early as May 10, 2002. Thereafter, on May 30, 2002, Federal extended the coverage period of the 2001-2002 policy, including coverage for Kozlowski, one additional year to March 15, 2003. On February 13, 2003, approximately nine months after notice of dozens of lawsuits, Federal sent a letter purporting to rescind the 2001-2003 policy "based on material misrepresentations and omissions in the information" upon which it relied in issuing and extending the policy. Specifically, the rescission letter stated that Federal had relied upon Tyco's 2000 and 2001 10-K statements filed with the SEC in issuing the 2001 policy and the 2002 renewal. According to Federal, these documents contained misrepresentations as to purported loans to Kozlowski, compensation, unauthorized cash payments, accounting practices and distribution of funds received from the sale of company assets.

On the same date as the purported rescission, Federal filed this lawsuit against Kozlowski, Tyco and 14 other defendants, seeking a declaratory judgment that the 2001-2003 policy is rescinded and void ab initio, and that Federal is entitled to deny coverage as to all defendants. Federal subsequently amended its complaint, relinquishing its claims against Tyco and the other defendants except, as noted, Kozlowski, Swartz and Belnick.[8] Kozlowski counterclaimed, seeking, inter alia, a declaration that Federal's policy covers his losses in connection with the underlying actions.

After joinder of issue, Kozlowski moved for partial summary judgment, seeking a declaration that Federal is required to defend him in the ERISA action and pay his defense costs in the securities litigation and criminal prosecution. In opposition, Federal argued that it had effected a rescission of the policy and tendered a return of Tyco's premiums. It argued, alternatively, that the motion was premature, given its lack of opportunity to conduct discovery.

---

**8.** Despite its assertions that the policy is void by virtue of its February 13, 2003 rescission, Federal has continued to defend Tyco and the defendants other than Kozlowski, Swartz and Belnick and has stated its willingness to continue to pay their defense costs.

Supreme Court granted Kozlowski's motion. Finding a dearth of New York law on the question of whether Federal's unilateral rescission excuses its current duty, if any, to defend or pay defense costs, the court looked to rulings from other jurisdictions and held that until Federal's rescission claims are litigated and determined in its favor, the policy obligation to defend or pay for a defense remains in effect. In so ruling, the court recognized that if Federal ultimately prevailed on its rescission claim, it could seek to recover the costs of the defense it provided Kozlowski.

In addition, the court rejected Federal's claim that the policy's personal profit exclusion applied and determined that Federal was obligated, as the case may be, to defend or pay defense costs in each of the underlying actions, finding that the allegations in the underlying actions do not solely and entirely fall within the exclusion.

We affirm Supreme Court's declaration as to Federal's duty to defend the ERISA action, but modify with respect to the duty to pay defense costs of the securities action and the criminal prosecution to the extent of limiting Federal's obligation to pay only those costs relating to liabilities that fall under the coverage provided, i.e., defense costs for covered claims. To the extent claims fall under the personal profit exclusion, Federal is not obligated to reimburse Kozlowski for his defense costs.

As noted, under the fiduciary liability section of the policy Kozlowski is entitled to a defense against any third-party claim alleging that he committed "Wrongful Acts" as a fiduciary of the Tyco ERISA plan. Under the ELI section, Federal must pay all "Loss" for which an insured person, who is not being indemnified by Tyco, "becomes legally obligated to pay" as a result of alleged "Wrongful Acts." "Defense Costs" are defined as a loss item. Thus, whether the obligation is to provide a defense or pay defense costs, the primary issue presented on appeal is whether Federal, as it contends, may avoid its obligations by electing to rescind by notice on the grounds of material misrepresentations and omissions in the information provided for the issuance of the policies.

Insurance Law § 3105 (a) defines a misrepresentation as a false "statement as to past or present fact, made to the insurer by, or by authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." Section 3105 (b) provides that an insurance contract cannot be avoided un-

less the misrepresentation is material, and that "[n]o misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." "An insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to making the contract and the misrepresentation was material" (*Curanovic v New York Cent. Mut. Fire Ins. Co.*, 307 AD2d 435, 436 [2003]). "Materiality is generally a question of fact" (*id.* at 437).

In this regard, it should be noted that the 2001-2003 policy contains a severability provision that precludes Federal from imputing to Kozlowski statements or knowledge of other insureds. Thus, Federal must show that Kozlowski participated, directly or indirectly, in misrepresenting facts to induce Federal to issue the policy (*Wedtech Corp. v Federal Ins. Co.*, 740 F Supp 214, 218-219 [SD NY 1990]). Federal makes no effort to meet this burden. It fails to cite any alleged misrepresentation made by Kozlowski to induce the issuance of the 2001-2003 policy or even allege that Kozlowski ever signed an application or furnished any answers or information as part of the application process. Rather, Federal alleges that it relied on public financial statements, which, tellingly, it does not allege were part of the application.

Putting aside the merits of Federal's substantive right to rescission, there is the issue of its attempt to avoid the policy's defense obligations by the assertion of a common-law rescission by notice, based on fraudulent inducement, without the need of a judicial determination to that effect. In support of its position, Federal cites *McNaught v Equitable Life Assur. Socy.* (136 App Div 774, 776 [1910]), which held that upon discovery of a fraud that induced a party to enter into a contract, such party "may make [a rescission] by his own act . . . or he may go into a court of equity and ask for a rescission." No one contests the validity of that principle. It must be noted, however, that in *McNaught*, which involved an insured's attempt to rescind a life insurance policy, there had been no change in the parties' respective positions since the contract had been entered into, except for the payment of premiums, the return of which the plaintiffs sought in exchange for the tender back of the policy.[9]

Here, in contrast, Federal elected to rescind by notice on February 13, 2003, almost two years after the policy in question

---

**9.** Ultimately, the case was decided against the plaintiffs on the ground of ratification.

had gone into effect and after claims, as reflected in the underlying actions, had been asserted thereunder. Thus, the status quo has not been maintained. In such circumstances, a rescission by notice cannot, without legal sanction, have retroactive effect and serve to suspend, even temporarily, obligations that—absent a basis for rescission—have accrued under the policy. Of course, as to any claim of obligation under the policy not yet incurred, Federal's rescission by notice would be prospectively effective since "the actual rescission happen[s] not when the judgment [is] obtained in the action for a rescission, but when the election to rescind was made known" (*McNaught,* 136 App Div at 778). Needless to say, if Federal prevails in its claim of right to rescind on the basis of fraud in the inducement, its obligation to defend Kozlowski is vitiated and the policy will be rendered void from its inception irrespective of the point in the life of the policy that a liability claim may have arisen.

Although Federal cites authority other than *McNaught* for the proposition that a party has a right to rescind by notice a contract induced by fraud (*see e.g. LaRocca v John Hancock Mut. Life Ins. Co.,* 286 NY 233, 236 [1941]; *Energy Capital Co. v Caribbean Trading & Fid. Corp.,* 1996 WL 157498, \*7, 1996 US Dist LEXIS 4170, \*20 [SD NY 1996]; Restatement [Second] of Contracts §§ 7, 164), none involves the situation presented here, where the insurer asserts the right to rescind by notice at a time when there are outstanding claims against an insured who is seeking coverage under the policy's obligation to defend or pay defense costs with respect to those claims.

Aside from the rescission issue, which must await judicial determination, the only argument advanced to avoid providing a defense or reimbursing Kozlowski for his defense expenses is the policy's personal profit exclusion. On that point, Supreme Court appropriately recognized that the duty to defend or pay defense expenses turns solely on whether, as to each of the underlying actions, the complaint alleges any facts or grounds that bring the action within the liability coverage purchased.

The rule is well settled that the duty to defend is broader than the duty to indemnify (*Fitzpatrick v American Honda Motor Co.,* 78 NY2d 61, 65 [1991]). The duty to defend arises whenever the underlying complaint alleges facts that fall within the scope of coverage (*see Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310 [1984]). "[T]he same allegations that trigger a duty to defend trigger an obligation to pay defense costs" (*Travelers Prop. Cas. Corp. v Winterthur Intl.,* 2002 WL 1391920, \*6, 2002

US Dist LEXIS 11342, *17 [SD NY 2002]). Both "an insurer's duty to defend and to pay defense costs under liability insurance policies must be construed broadly in favor of the policy-holder"[10] (*Admiral Ins. Co. v Weitz & Luxenberg, P.C.*, 2002 WL 31409450, *3, 2002 US Dist LEXIS 20306, *9 [SD NY 2002]). The ultimate validity of the underlying complaint's allegations is irrelevant. "The existence of the duty is dependent upon whether sufficient facts are stated so as to invoke coverage under the policy" (*American Home Assur. Co. v Port Auth. of N.Y. & N.J.*, 66 AD2d 269, 278 [1979]).

The allegations in each of the underlying actions demonstrate that the claims asserted do not solely and entirely fall within the personal profit exclusion. In the ERISA action, for instance, although the complaint alleges that Kozlowski and the other defendants breached their fiduciary duties by permitting the plans to buy Tyco stock at a time when it was not prudent to do so, it fails to allege that Kozlowski personally profited from this purported breach. As for the securities action, the claims against Kozlowski are based on his alleged misstatements and omissions and harm caused to plaintiffs in overstating Tyco's assets and value, and failing to reveal illegal profits and disclose facts regarding Tyco's strategy and accounting practices. These are archetypical of claims that encompass both excluded and covered behavior. Supreme Court properly rejected the applicability of the personal profit exclusion to the criminal prosecution because the indictment charges Kozlowski not only with crimes involving personal profit, but those such as making false entries to facilitate loans for other Tyco employees, from which he did not directly profit.

The obligation to defend is readily understood and its requirement is clear—the insurer must afford a defense to the insured for covered as well as noncovered claims if the latter are intertwined with covered claims. The obligation to pay defense expenses, on the other hand, is not as easily defined or applied. Under this type of defense coverage, the insurer is entitled to differentiate between covered and noncovered claims (*National Union Fire Ins. Co. of Pittsburgh, Pa. v Ambassador Group*, 157 AD2d 293 [1990], *lv dismissed* 77 NY2d 873 [1991]), despite the fact that a promise to pay defense costs has been construed to

---

**10.** The effective difference between the two defense obligations is who chooses and pays the defense attorney, not whether a defense obligation lies with the insurer (*see e.g. In re WorldCom, Inc. Sec. Litig.*, 354 F Supp 2d 455, 464 n 11 [SD NY 2005]).

require contemporaneous payment. In *Gon v First State Ins. Co.* (871 F2d 863 [9th Cir 1989]), the insurer who issued a directors and officers liability policy argued that absent a duty to defend, it did not have to pay legal defense expenses as incurred. The court held that because the policy provided coverage for loss that the insured shall become "legally obligated" to pay[11] and an insured becomes legally obligated to pay legal expenses as soon as the services are rendered, the insurer was required to pay defense expenses as incurred (*id.* at 868). The court also held that defense expenses were subject to apportionment between covered and noncovered claims (*id.*; *see Okada v MGIC Indem. Corp.*, 823 F2d 276 [9th Cir 1986]).

This Court has recognized that under a directors and officers liability policy calling for the reimbursement of defense expenses, as in *Gon* and *Okada*, "insurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage was afforded" (*National Union Fire Ins. Co.*, 157 AD2d at 299). The duty to pay "arises at the time the insured becomes 'legally obligated to pay' " (*Little v MGIC Indem. Corp.*, 836 F2d 789, 793 [3d Cir 1987] [quoting policy definition of loss]). The contemporaneous payment of defense costs is required because "[t]he only reasonable interpretation of the loss clause in the . . . [directors and officers] Policy is that the insurer's obligation to pay accrues when the insured incurs the obligation, not after it has paid a judgment" (*National Union Fire Ins. Co. of Pittsburgh, Pa. v Brown*, 787 F Supp 1424, 1430 [SD Fla 1991], *affd* 963 F2d 385 [11th Cir 1992]).

Thus, while Federal must pay defense costs as they are incurred in the securities action and the criminal proceeding, its ultimate liability for such costs is only with respect to such liabilities as fall under the coverage provided. To the extent such liabilities are excluded from coverage by the personal profit exclusion, Federal is not required to pay for defense costs. Since this allocation cannot be made at this juncture and the duty to defend is broader than the duty to indemnify, Federal must pay all defense costs as incurred, subject to recoupment when Kozlowski's liabilities, if any, are determined.

Accordingly, the interlocutory judgment of the Supreme Court, New York County (Helen E. Freedman, J.), entered June

---

**11.** The policy defined loss explicitly to include the cost of the defense of legal actions.

22, 2004, declaring, inter alia, that plaintiff is obligated to defend defendant Kozlowski in the ERISA action and pay current and future defense costs in a certain criminal proceeding and a civil securities action, should be modified, on the law, to declare that plaintiff's obligations with respect to the criminal proceeding and the securities action are limited to defense costs incurred, subject to apportionment and reimbursement for the cost of the defense of noncovered claims, and, except as thus modified, affirmed, without costs or disbursements. Appeal from order, same court and Justice, entered on or about March 5, 2004, which granted defendant Kozlowski's motion for partial summary judgment, should be dismissed, without costs or disbursements.

SAXE, J.P., FRIEDMAN, NARDELLI and WILLIAMS, JJ., concur.

Interlocutory judgment, Supreme Court, New York County, entered June 22, 2004, modified, on the law, to declare that plaintiff's obligations with respect to the criminal proceeding and the securities action are limited to defense costs incurred, subject to apportionment and reimbursement for the cost of the defense of noncovered claims, and otherwise affirmed, without costs or disbursements. Appeal from order, same court, entered on or about March 5, 2004, dismissed, without costs or disbursements.