■ GREGORY V. SERIO, Superintendent of Insurance of the State of New York, as Liquidator of Nassau Insurance Company, Appellant, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Respondent. [795 NYS2d 529]—

Judgment, Supreme Court, New York County (Helen E. Freedman, J.), entered February 24, 2004, which granted defendant's motion to dismiss the complaint, and order, same court and Justice, entered October 20, 2004, which, to the extent

appealable, denied plaintiff's motion to renew, unanimously affirmed, without costs.

The liquidator of the now defunct Nassau Insurance Company seeks, under Insurance Law § 3420 (a) (2), to recover on the judgment awarded against Richard DiLoreto, Nassau's former president, in *Serio v Ardra Ins. Co.* (304 AD2d 362 [2003], *appeal dismissed* 100 NY2d 576 [2003], *lv denied* 100 NY2d 516 [2003]). The basis of the recovery is a directors and officers liability and corporation reimbursement insurance policy (the D&O policy) issued by defendant. Defendant was entitled to rely on the "personal profit or advantage exclusion" and "dishonesty exclusion" in refusing to pay for the judgment. Plaintiff maintains his claim against the president in the underlying action was based on Insurance Law § 1505 (a), which simply prohibits a person in control of an insurance company from involving it in transactions with a related party that are not "fair and equitable" to the insurer. In convincing the jury in the underlying action of a violation of section 1505 (a), plaintiff had argued that the president made personal use of Nassau's funds rather than retaining them for appropriate purposes. Thus, plaintiff himself has previously taken the position that the president used Nassau for "personal profit or advantage," an event which the D&O policy excluded from liability coverage.

Plaintiff now emphasizes that there is no indication the jury ever specifically found the president had used the Nassau funds for his personal needs. But the record indicates that both the jury and this Court found Ardra Insurance Company, which the president controlled (his wife Jeanne was Ardra's controlling shareholder), gained a certain advantage by receiving Nassau funds for which he did not account (*see Jarvis Christian Coll. v National Union Fire Ins. Co. of Pittsburgh, PA.*, 197 F3d 742, 747 [5th Cir 1999]). The "personal profit or advantage" the president received was more than just a mere "derivative benefit" (*cf. In re Donald Sheldon & Co., Inc.*, 186 BR 364, 369 [SD NY 1995]).

*Federal Ins. Co. v Kozlowski* (18 AD3d 33 [2005]), on which plaintiff relies, does not warrant a different conclusion. There, unlike the present case, the allegations against the director in the underlying actions did not solely and entirely fall within the personal profit exclusion (*id.* at 41).

In any event, the record reflects, at the very least, that coverage is barred pursuant to the D&O policy's "dishonesty exclusion." In the underlying action, we observed that the jury concluded the president had diverted Nassau's premiums to his other entities "as part of an integrated transaction designed to

benefit [his] entities" (304 AD2d at 363 [citations omitted]). Surely, the jury's finding in this regard and its decision that the president should pay the Nassau estate millions of dollars demonstrated a determination that his actions had been intentional. Our final adjudication established that the insureds had purposely and intentionally committed active and deliberate dishonesty, and thus placed the matter squarely within the liability exclusion of the D&O policy.

Plaintiff's reliance on *In re Donald Sheldon* (186 BR 364 [1995], *supra*) is misplaced. That case involved a general verdict that the defendants violated the business judgment rule, engaging in either self-dealing, fraud or bad faith. The court held that a finding of dishonesty was not necessary to the judgment (*id.* at 370). Here, by contrast, both the jury (in its special verdict) and this Court found the DiLoretos had intentionally diverted assets to their own entities, which by definition constituted acts of dishonesty. Moreover, the record indicates that the "loss" in this case is uninsurable under New York law (*see Reliance Group Holdings v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 188 AD2d 47, 54-55 [1993], *lv dismissed in part and denied in part* 82 NY2d 704 [1993]; *see also Vigilant Ins. Co. v Credit Suisse First Boston Corp.*, 10 AD3d 528 [2004]).

Nor is defendant obligated to reimburse plaintiff for his costs in defending Nassau's treasurer in the third-party action brought by Nassau's president. As plaintiff has readily acknowledged, he was not obligated to advance defense costs for the treasurer, who at the time of the third-party action was an officer in plaintiff's Liquidation Bureau. Thus, there is no indication that the treasurer was "entitled to indemnification by [Nassau]" under the D&O policy. That it may be good public policy or business sense for the State Insurance Department to defend its employees who are former directors of insurance companies does not translate into a requirement that an insurer of a D&O policy must reimburse the Department in that instance, notwithstanding a provision in the policy that the insurer must provide coverage if the director is entitled to it. Plaintiff's reliance on *Mid-City Shopping Ctr. v Consolidated Mut. Ins. Co.* (35 AD2d 1053 [1970]) is unavailing. The plaintiff seeking reimbursement in that case was the insured's alternate insurer, whereas here it cannot be said that either Nassau or plaintiff was, by any definition, an insurer of the treasurer. Concur—Mazzarelli, J.P., Andrias, Saxe, Williams and Catterson, JJ.