15-2941-cv
*Petroterminal de Panama, S.A. v. Houston Casualty Company*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of September, two thousand sixteen.

PRESENT:     RALPH K. WINTER,
             DENNY CHIN,
             CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

PETROTERMINAL DE PANAMA, S.A.,
             *Plaintiff-Counter-Defendant-Appellant*,

                         v.                              15-2941-cv

HOUSTON CASUALTY COMPANY, NATIONAL
LIABILITY & FIRE INSURANCE COMPANY, AKA
National Fire & Liability Insurance Company, LIBERTY
MUTUAL INSURANCE COMPANY, GREAT
AMERICAN INSURANCE COMPANY OF NEW YORK,
INDEMNITY INSURANCE COMPANY OF NORTH
AMERICA, CONTINENTAL INSURANCE COMPANY,
FIREMAN'S FUND INSURANCE COMPANY,
AMERICAN HOME ASSURANCE COMPANY
             *Defendants-Counter-Claimants-Appellees*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-COUNTER-
DEFENDANT-APPELLANT:

JARED ZOLA, Blank Rome LLP, New York,
New York.

FOR DEFENDANTS-COUNTER-
CLAIMANTS-APPELLEES
HOUSTON CASUALTY COMPANY,
NATIONAL LIABILITY & FIRE
INSURANCE COMPANY, LIBERTY
MUTUAL INSURANCE COMPANY,
GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK,
INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA,
CONTINENTAL INSURANCE
COMPANY:

JAY LONERO (Angie Akers, *on the brief*),
Larzelere Picou Wells Simpson Lonero LLC,
Metairie, Louisiana, *and* Michael A. Kotula,
Rivkin Radler LLP, Uniondale, New York.

FOR DEFENDANTS-COUNTER-
CLAIMANTS- APPELLEES GREAT
AMERICAN INSURANCE
COMPANY OF NEW YORK,
INDEMNITY INSURANCE
COMPANY OF NORTH AMERICA,
FIREMAN'S FUND INSURANCE
COMPANY, AMERICAN HOME
ASSURANCE COMPANY:

STEPHEN V. RIBLE (Michelle T. Castle, *on the
brief*), Mendes & Mount, LLP, New York, New
York.

Appeal from the United States District Court for the Southern District of

New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-counter-defendant-appellant Petroterminal de Panama, S.A.

("Petroterminal") appeals an August 17, 2015 judgment of the district court awarding

$466,765.76 to certain of the defendants-counter-claimants-appellees (collectively, the

"Primary Insurers") and $1,472,677.69 to other defendants-counter-claimants-appellees (collectively, the "Bumbershoot Insurers," and with the Primary Insurers, the "Insurers"). The judgment was entered pursuant to the district court's July 16, 2015 opinion and order denying Petroterminal's motion for summary judgment and granting summary judgment in favor of the Insurers. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

Petroterminal owns and operates oil transport and storage facilities in Panama. Relevant to this appeal are two insurance policies (the "Policies"), one for "Marine Liabilities" (the "Primary Policy") and the other for "Bumbershoot Liabilities" (the "Bumbershoot Policy"), that Petroterminal purchased to cover its operations for the 2007 calendar year.

The Primary Policy provides that it will "pay on behalf of [Petroterminal], any . . . sums as [it] may be liable to pay as the result of an accident . . . in connection with [Petroterminal's operations], . . . including liability . . . [f]or any accident or occurrence . . . in connection with [operating] pipelines from the terminals." J. App. at 114. It also covers "all costs . . . in connection with any claim [t]hereunder." *Id.* at 116. Coverage for "[l]iability arising from delay, loss of market and/or consequential loss therefrom" and "[l]oss . . . resulting from . . . seizure [or] confiscation by order of any government or public authority" is excluded. *Id.* at 115-16.

The Bumbershoot Policy is excess insurance and, as endorsed, provides that it will "pay on behalf of [Petroterminal liabilities] which are covered in [the] underlying policies [for] [a]ll . . . sums which [Petroterminal] shall become legally liable to pay as damages on account of . . . property damage," defined as "physical loss of or direct physical damage to or destruction of tangible property." *Id.* at 178, 181, 192. "Damages" is defined to include "all . . . fees . . . for . . . lawyers . . . paid as a consequence of any occurrence covered [t]hereunder." *Id.* at 179. Coverage for liability "resulting from . . . capture, seizure, arrest, taking, restraint, detainment, confiscation . . . or the consequences thereof" is excluded. *Id.* at 182.

On February 4, 2007, a pipeline control valve failed at a Petroterminal facility in Chiriqui Grande, Panama, causing a minor oil spill. Petroterminal and other firms connected to the facility were sued. To secure jurisdiction over an affiliate of Swiss-based Castor Petroleum in one lawsuit, a Panamanian court issued an attachment of 5.4 million barrels of oil that Castor was storing at the Chiriqui Grande facility. Six weeks later, the Panamanian Supreme Court suspended the attachment and eventually found it violative of due process.

On January 25, 2008, Castor sued Petroterminal in New York state court, alleging that the oil spill amounted to a breach of their Transport and Storage Agreement (the "TSA"), which caused Castor to suffer damages for shipping expenses, trading losses, and lost profits, and triggered Petroterminal's indemnification

obligations under the TSA (the "Castor Suit").  On April 24, 2008, Petroterminal and the

Insurers agreed in writing that the latter would advance the former 50% of its costs to

defend the Castor Suit (the "Defense Costs Agreement").  The parties also agreed,

however, that the losing party in any later coverage action would reimburse the

prevailing party for the costs advanced or owed.  Nearly seven years later, the New

York court found that a force majeure, namely, the attachment, relieved Petroterminal of

any liability under the TSA.  Petroterminal then exercised its rights under the Defense

Costs Agreement by bringing this insurance coverage action.

The question presented is whether the claims asserted in the Castor Suit

are covered under the Policies.  The district court concluded they were not because the

illegal attachment caused Castor's damages, rather than a covered occurrence, and

because Castor's claims fell within the Policies' exclusions.  Accordingly, it granted the

Insurers' summary judgment motions and entered a final judgment in the amounts

noted.  This appeal followed.

On appeal, Petroterminal argues that the district court (1) misapplied New

York law by looking beyond the complaint in the Castor Suit to determine if the claims

were covered and (2) misconstrued the Policies' exclusions in making its coverage

determination.

We review *de novo* the district court's summary judgment ruling,

"construing the evidence in the light most favorable to the non-moving party and

drawing all reasonable inferences in [its] favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Because interpretation of an insurance agreement is a question of law, we review the district court's construction of the [Policies] de novo.'" *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 149 (2d Cir. 2016) (quoting *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 729 (2d Cir. 2012)). In this case, we interpret the Policies under New York law.[1]

New York courts interpret insurance policies according to principles of contract law, giving policy language its "plain and ordinary meaning" and construing ambiguities in favor of the insured. *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 26 N.Y.3d 649, 655 (2016). In making a coverage determination, exclusions from policy coverage are "accorded a strict and narrow interpretation" -- "before an insurance company is permitted to avoid policy coverage" it must establish that the exclusions "apply in the particular case [and] are subject to no other reasonable interpretation." *Pioneer Tower Owners Ass'n v. State Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 307 (2009) (internal quotation marks omitted).

A threshold issue is whether the Policies impose on the Insurers a duty to defend, a duty to pay defense costs for claims that are arguably covered subject to a

_____

[1] The parties agree that New York law governs the construction and interpretation of the Policies.

right of recoupment, or simply a duty to indemnify.  An insurer with a duty to defend must pay defense costs "[i]f the claims asserted, though frivolous, are within policy coverage," whereas the duty to indemnify "is determined by the actual basis for the insured's liability to a third person." *Servidone Constr. Co. Corp. v. Sec. Ins. Co. of Hartford.*, 64 N.Y.2d 419, 424 (1985).  Courts examine the policy language to determine whether the insurer has a duty to defend or a duty to indemnify and will find the former only where it is expressly stated.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Ambassador Grp., Inc.*, 556 N.Y.S.2d 549, 551 (2d Dep't 1990) (finding no duty to defend where policy covered "any amount which the [i]nsureds are legally obligated to pay for a claim . . . includ[ing] costs . . . incurred in the defense of actions"); *MBIA Inc. v. Certain Underwriters at Lloyd's, London*, 33 F. Supp. 3d 344, 355 (S.D.N.Y. 2014) ("In the absence of a policy provision expressly imposing a duty to defend, New York courts will not find such a duty." (internal quotation marks omitted)).  Further, "even though a non-duty to defend policy may not [expressly] provide for the advancement of legal costs, . . . New York law generally requires . . . advancement . . . , though such fees are subject to recoupment by the insurer if it is ultimately found that no coverage exists." *QBE Ams., Inc. v. ACE Am. Ins. Co.*, No. 653442/2013, 2014 WL 4250089, at *6 (Sup. Ct. N.Y. Cty. Aug. 27, 2014).

Petroterminal concedes that the Policies do not impose a duty to defend. Instead, it argues that the Policies "require [the Insurers] to pay defense costs as they are

incurred."  Petroterminal Br. 23.  Petroterminal further contends that, like the duty to defend, this duty to pay defense costs "turns solely on whether . . . the complaint alleges facts or grounds that bring the action within the liability coverage purchased."  *Id.* at 22 (omission in original) (quoting *Federal Ins. Co. v. Kozlowkski*, 792 N.Y.S.2d 397, 402 (1st Dep't 2005)).  It argues that the district court thus erred in basing its coverage determinations on the New York court's summary judgment ruling.  We conclude there was no error.

The Bumbershoot Policy imposes only a duty to indemnify.  It provides coverage for sums "which the Insured shall become legally liable to pay as damages," including defense costs "*paid as a consequence of any occurrence covered hereunder*."  J. App. at 178-79 (emphasis added).  We previously have concluded that identical language creates a duty to pay "defense costs for claims that are established to be covered through judgment and settlement," *i.e.*, claims for which the insurer has a duty to indemnify, "and not for claims only potentially falling within the policy's coverage." *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995) (interpreting a policy providing that the insured "will be indemnified for damages and defense costs '*paid as a consequence of any occurrence covered hereunder*'" (emphasis added)).  Therefore, the Bumbershoot Insurers were liable for Petroterminal's costs in defending the Castor Suit only if the judgment established that Castor's claims were covered by the Bumbershoot Policy.  It was established at summary judgment that

Castor's damages arose out of the attachment of its oil, rather than any of Petroterminal's actions. That attachment falls squarely within the Bumbershoot Policy's exclusion for loss or damages "resulting from . . . capture, seizure, arrest, taking, restraint, detainment, confiscation . . . or the consequences thereof." J. App. at 182. Therefore, the Bumbershoot Insurers were not obligated to pay for Petroterminal's defense of the Castor Suit.

We conclude that the Primary Policy also imposes only a duty to indemnify. As noted, it provides that the Primary Insurers will "pay on behalf of [Petroterminal], any . . . sums as [it] may be liable to pay as the result of an accident," as well as "costs . . . in connection with any *claim [t]hereunder*." *Id.* at 115-16 (emphasis added). The Primary Insurers thus agreed to pay defense costs incurred in connection with any claim or money demanded *under the Primary Policy* that Petroterminal was *liable* to pay, or, in other words, costs expended in defense of *covered liability*. As the Primary Policy also has an exclusion applicable to the attachment of Castor's oil, the Primary Insurers also had no duty to pay for Petroterminal's defense of the Castor Suit.

Moreover, assuming that the Policies do create a duty to advance defense costs, the Insurers were not required to advance here because they were "entitled to differentiate between covered and non-covered claims." *Kozlowski*, 792 N.Y.S.2d at 403; *accord QBE Am*, 2014 WL 4250089, at *5 (same). The complaints in the Castor Suit repeatedly allege that Castor was injured because it could not access its oil due to the

attachment. As noted, such claims are within the Policies' exclusions for loss resulting from seizure or confiscation. *Cf. Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 450 (E.D.N.Y. 2015) (finding no coverage where "the allegations in . . . the underlying complaints plainly reveal that [the claims] are excluded from coverage, because each claim . . . 'arises out of'" excluded risk (alteration omitted)). Further, although Castor alleged negligence in respect of the oil spill, the only *losses* alleged were for business interruption damages for shipping-related expenses, trading losses, lost profits, lost opportunities, and other consequential damages. Such claims for consequential loss are plainly not covered in light of Primary Policy's exclusion of "[l]iability arising from delay, loss of market, . . . or consequential loss therefrom" J. App. at 116. *See Gen. Star*, 80 F. Supp. 3d at 450 n.6 ("New York state courts, as well as other courts in this circuit, have held that the phrase 'arising out of' is not ambiguous, and is 'ordinarily understood to mean originating from, incident to, or having connection with.'" (quoting *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 568 (2d Cir. 2011)). Nor are consequential losses covered by the Bumbershoot Policy, which limits coverage to "damages on account of . . . [personal injury and] *property damage*" as defined therein. J. App. at 178 (emphasis added). Accordingly, the Insurers had no duty to advance costs for defense of the Castor Suit.

Finally, we note that had advancement of defense costs been required, the Insurers would have been entitled to recoup all amounts advanced because in the end

none of Castor's claims were covered. *See, e.g.*, *Kozlowski*, 792 N.Y.S.2d at 403 (defense costs advanced are "subject to recoupment in the event it is ultimately determined no coverage was afforded" (quoting *Nat'l Union Fire Ins. Co.*, 556 N.Y.S.2d at 553)); *QBE Am. Inc.*, 2014 WL 4250089 at *6 ("[A]ny defense costs advanced are subject to recoupment if no coverage is found."). Indeed, that is why Petroterminal agreed to recoupment in the Defense Costs Agreement in the first place. *See id.* ("[T]here is no compelling reason why an insured should not wait to recover until a coverage determination is made because a claim for defense costs rises and falls with the underlying coverage claim.").

We have reviewed Petroterminal's remaining arguments and conclude they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

- 11 -