Continental Casualty Company v. Boughton

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of June, two thousand Seventeen.

PRESENT: AMALYA L. KEARSE,
         DENNIS JACOBS,
         DEBRA ANN LIVINGSTON,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - - - -X
CONTINENTAL CASUALTY COMPANY,
         Plaintiff-Counter-Defendant-
         Appellee,

         -v.-                                        16-2384

JOSEPH J. BOUGHTON, JR., NORTHSTAR
INVESTMENT GROUP, LTD.,
         Intervenor-Defendants-
         Counter-Claimants-
         Appellants,

1

**MARSHALL GRANGER & COMPANY, LLP,**
**LAURENCE M. BROWN, RONALD J. MANGINI,**
     <u>**Defendants.**</u>[*]
- - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANTS:** | JOHN W. SCHRYBER, Reed Smith LLP, Washington, DC. |
| | Mark S. Goldstein, Reed Smith LLP, New York, NY. |
| **FOR APPELLEE:** | RICHARD A. SIMPSON, Wiley Rein LLP, Washington, DC. |

    Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, <u>J.</u>).

    **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED**.

    Joseph J. Boughton, Jr. and Northstar Investment Group, Ltd. appeal the judgment of the United States District Court for the Southern District of New York (Seibel, <u>J.</u>), rescinding an insurance policy issued by Continental Casualty Company ("Continental") to Marshall Granger & Company, LLP ("Marshall Granger"). Continental's declaratory judgment action against Marshall Granger and its owners sought rescission on the ground that Marshall Granger procured the policy through material misrepresentations.

    Boughton and Northstar (collectively "Intervenors") argue that Continental cannot rescind, notwithstanding the misrepresentations, because Continental (1) "ratified" the insurance policy and (2) unreasonably delayed in seeking rescission, grounds to foreclose rescission under New York law. The district court granted summary judgment to Continental on the ratification issue, and, after trial, a jury determined that Continental's delay in filing its rescission lawsuit was reasonable. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

---

[*] We respectfully direct the Clerk of Court to amend the caption.

2

**1.** An insurer may not rescind a policy if, after having the requisite knowledge of the insured's fraud, it commits an act that affirms the policy. See Agristor Leasing-II v. Pangburn, 557 N.Y.S.2d 183, 185 (4th Dep't 1990); Brennan v. Nat'l Equitable Inv. Co., 247 N.Y. 486, 489 (1928). We review a district court's grant of summary judgment de novo. Urbont v. Sony Music Entm't, 831 F.3d 80, 88 (2d Cir. 2016).

In this Court, the Intervenors allege four acts of ratification. Not all of these arguments are properly before us. As to those that are, none of the acts amount to ratification, and we thus need not consider the degree of knowledge of the insured's fraud that an insurer must have before being capable of ratifying the contract with an affirming act.

**a.** Continental sent a letter to one of Marshall Granger's owners invoking one of the policy's clauses to deny coverage of a claim. The Intervenors did not argue to the district court that this constituted ratification, so we do not consider it. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." Greene v. United States, 13 F.3d 577, 586 (2d Cir. 1994).

The Intervenors contend that the issue was preserved in their summary judgment papers. While this issue was discussed to some extent, it was raised in the portion of their memorandum that sought to prove that Continental had the level of *knowledge* of fraud necessary to allow it to justify rescission; the denial-of-coverage letter was not alleged to have ratified the policy in the section of their memorandum that discussed Continental's particular *acts* said to constitute ratification. Consequently, the Intervenors did not properly apprise the district court of this argument.

**b.** The Intervenors argue that Continental ratified the policy by amending it. The amendments in question, however, merely changed the insured's name and address. Ministerial changes cannot serve to ratify an insurance policy. Cf., e.g., U.S. Life Ins. Co. in N.Y.C. v. Blumenfeld, 938 N.Y.S.2d 84, 87 (1st Dep't 2012) (holding insurer's acceptance of premiums after acquiring rescission-justifying knowledge ratified policy); Sitar v. Sitar, 878 N.Y.S.2d 377, 380 (2d Dep't 2009).

**c.** Continental agreed to pay $12,500 to one of Marshall Granger's owners to defray his legal costs in defending various investigations.

The district court properly rejected this ratification argument because Continental was legally compelled to make the payment. When an insurer promises to pay an insured's defense costs, New York law requires the insurer to continue performing that obligation until a court enters a judgment granting rescission of the contract. See Fed. Ins. Co. v. Kozlowski, 792 N.Y.S.2d 397, 400-02, 403-04 (1st Dep't 2005) (rejecting insurer's argument that it was not required to pay defense costs to the insured after the insurer sought rescission of the policy); In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d 455, 465 (S.D.N.Y. 2005) ("Until the issue of rescission is adjudicated, a contract of insurance remains in effect and the duty to pay defense costs is enforceable.").

The Intervenors concede that "an insurer who has sought rescission may not stop performing its coverage obligations once it files for rescission." Appellants' Reply Br. at 6. However, the Intervenors contend that this rule requires insurers to pay defense costs only *after* filing for rescission, and that a decision to pay defense costs *before* seeking rescission serves as ratification. The district court soundly refuted this argument:

> If the law were as [Intervenors] argue, insurers would be obligated to advance defense costs before learning of a potential ground for rescission (as normally required under the policy), would be forbidden from advancing defense costs during an investigation into that potential ground (lest it later be found to have waived rescission), and then would be again obligated to resume advancing defense costs once a formal action for rescission was filed . . . .  This flip-flopping cannot be what the law requires.

Cont'l Cas. Co. v. Marshall Granger & Co., 6 F. Supp. 3d 380, 398 n.22 (S.D.N.Y. 2014). Since New York law required Continental to pay these defense costs, such payment did not "ratify" the policy.

**d.** Continental offered "extended reporting coverage" to the insured when Continental decided not to renew the

4

policy. Once again, this act does not constitute ratification because New York law required Continental to offer this coverage. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 11, § 73.3(c)(1) ("Upon termination of coverage, extended reporting period coverage required by this Part must be available for any claims-made liability coverage provided under the policy."). Consequently, ratification cannot be based on this act.

The Intervenors cite N.Y. Ins. Law § 3426 to argue that New York law did not require Continental to offer extended reporting coverage in these circumstances. We assume that the Intervenors are relying on the following statutory wording: "Nothing in this section shall be . . . construed to limit the grounds for which an insurer may lawfully rescind or suspend a policy or decline to pay a claim under a policy." N.Y. Ins. Law § 3426(m). We do not see (and the Intervenors do not explain) how this provision affects Continental's responsibility to offer a required extension of reporting coverage when a policy's coverage ends. Since Continental was required to offer such coverage, it did not ratify the policy by doing so.

The Intervenors further argue that Continental's issuance of a notice of non-renewal without previously seeking rescission signified that the policy would remain in effect through its normal termination date. The Intervenors cite a New York case holding that a policy was ratified when the insurer informed its policyholder that it was canceling the policy as of a specific future date. <u>Stein v. Sec. Mut. Ins. Co.</u>, 832 N.Y.S.2d 679, 681-82 (3d Dep't 2007).

But the cancellation notice in <u>Stein</u> meant that the insurer decided to continue current coverage until the (future) date of cancellation, whereas Continental gave notice that it would decline to enter into a *new* insurance contract upon the expiration of the old policy. It may be that a decision to cancel a policy precludes later attempts to seek rescission because cancellation evinces an understanding that the policy is currently valid, <u>cf.</u> <u>Merry Realty Co. v. Shamokin & Hollis Real Estate Co.</u>, 230 N.Y. 316, 323 (1921), but here Continental's non-renewal did not affirm the policy's validity.[1] When Continental sent its

---

[1] The Intervenors cite another case that held that "where an insurer who is aware of the insured's material

5

non-renewal letter, it was still considering whether to seek rescission and explicitly reserved its right to do so.

Because the Intervenors have not demonstrated that Continental performed any act that ratified the policy, we affirm the district court's grant of summary judgment to Continental on this issue.

**2.** The Intervenors challenge the jury instructions regarding the circumstances in which an insurer loses the right to rescind by failing to promptly seek rescission. We review "a claim of error in jury instructions <u>de novo</u>, reversing only where appellant can show that, viewing the charge as a whole, there was a prejudicial error." <u>United States v. Tropeano</u>, 252 F.3d 653, 657-58 (2d Cir. 2001).

**a.** The Intervenors assert that the district court did not properly advise the jury *when* Continental's duty to promptly file a rescission lawsuit arose, and that the jury should have been told that "Continental's obligation to act promptly arose once it formed the belief . . . that would allow it to file a lawsuit seeking rescission." Appellants' Opening Br. at 46.

The instructions given were consistent with the Intervenors' proposal:

> An insurer seeking rescission of an insurance policy may not unreasonably delay upon learning of the grounds for rescission. An insurer waives or forfeits its right to rescind when it fails to rescind a policy promptly after learning of sufficient facts to justify rescission. . . . [O]nce an insurer forms a reasonable belief that it has a factual basis to rescind, it must move with dispatch.

_____

misrepresentations elects to send a notice of non-renewal stating coverage will remain effective through the end of the policy, but will not be renewed, the insurer is estopped from seeking rescission." <u>GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim</u>, 593 F. Supp. 2d 471, 485 (E.D.N.Y. 2009). However, <u>GuideOne</u> relied solely on <u>Stein</u> for that proposition. Because <u>Stein</u> dealt with cancellation rather than non-renewal, <u>GuideOne</u> is unpersuasive.

6

App'x at 3620.

Notwithstanding the similarity of the actual charge to what was proposed, the Intervenors assert that other parts of the instructions render the actual charge erroneous. For example, the Intervenors challenge the additional statement that "[o]nce the insurer has a *clear legal and factual basis* to seek rescission, it must act promptly." App'x at 3621 (italics added). The Intervenors argue that this phrase incorrectly states the level of knowledge that an insurer must have before the "prompt action" requirement is initiated. Because the Intervenors did not object to this language in the district court, we review it only for "plain error," Fed. R. Civ. P. 51(d)(2), denying relief unless "the error affect[ed] substantial rights," id. We see no such error or effect.

The Intervenors are splitting hairs. To win on this point, the Intervenors would have to show that Continental *had* "formed the belief . . . that would allow it to file a lawsuit seeking rescission," but *did not* have a "clear legal and factual basis to seek rescission." The gap between these two statements is vanishingly small and insufficient to justify a new trial, especially when considered in light of the jury charge as a whole. See Tropeano, 252 F.3d at 657–58.

Oddly, the Intervenors challenge as prejudicial the reference to rescission as being a "drastic remedy." The Intervenors suggest that an insurer would be seen as justified in a long delay before seeking a drastic remedy. We review jury instructions in their entirety, see id., and the district court made clear that "[o]nce an insurer forms a reasonable belief that it has a factual basis to rescind, it must move with dispatch." App'x at 3620. Considered as a whole, the jury charge does not warrant a new trial.

**b.** The Intervenors contend that the district court improperly instructed that the Intervenors bore the burden of demonstrating that Continental delayed too long in filing for rescission. "'An erroneous instruction requires a new trial unless the error is harmless'" and "[a]n error is harmless only if the court is convinced that the error did not influence the jury's verdict." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (quoting LNC Invs., Inc. v. First Fidelity Bank, N.A. N.J., 173 F.3d 454, 460 (2d Cir. 1999)).

Even if the district court's instruction were incorrect, we would find the error to be harmless. The trial in this case was limited to a single issue: whether Continental unreasonably delayed in filing for rescission. The trial lasted for three days, and both parties introduced evidence related to that question. After trial, the jury deliberated (over lunch) for only sixty-four minutes. The verdict sheet asked the jury whether Continental "unreasonably delay[ed] in filing its rescission action," and the jury wrote "NO!" in the answer blank. App'x at 4021 (capitalization and exclamation mark in original).

The district court also instructed the jury that the Intervenors "need not prove more than a preponderance. So long as you find that the scales tip, *however slightly*, in favor of [Intervenors] . . . then their defense of waiver will have been proven by a preponderance of the evidence." App'x at 3618 (emphasis added). In light of that instruction, placing the burden on Intervenors could have affected the verdict only if the jury believed that Intervenors and Continental put forward equally compelling evidence. That is untenable in light of the jury's speedy and emphatic verdict. In the circumstances of this case, we have no difficulty in concluding that the district court's instructions regarding the burden (assuming it had been wrong) would have been harmless.

For the foregoing reasons, and finding no merit in Intervenors' other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8